**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

**BAP NO. PR 19-067**

---

**Bankruptcy Case No. 18-06035-MCF**

---

**CARMEN SOCORRO RIVERA,**
Debtor.

---

**JOSE A. MENDEZ ALBARRAN and
OLGA CIRA FONTAN LA SANTA,**
Appellants,

v.

**CARMEN SOCORRO RIVERA,**
Appellee.

---

Appeal from the United States Bankruptcy Court
for the District of Puerto Rico
(Hon. Brian K. Tester, U.S. Bankruptcy Judge)[1]

---

Before
Hoffman, Cary, and Panos,
United States Bankruptcy Appellate Panel Judges.

---

Madeleine Llovet Otero, Esq., on brief for Appellants.
Juan M. Suárez-Cobo, Esq., on brief for Appellee.

---

**May 20, 2021**

---

[1] The Honorable Brian K. Tester presided over the bankruptcy case and rendered the order at issue in this appeal. The case was later reassigned to the Honorable Mildred Cabán Flores.

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

Jose Mendez Albarran and Olga Cira Fontan La Santa (collectively, the "Appellants") hold a lien on the residence of Carmen Socorro Rivera (the "Debtor") arising from a pre-petition judgment against the Debtor and her two brothers, who co-own the property with her. In her bankruptcy case, the Debtor moved to avoid the lien, claiming it impaired her homestead exemption. The Appellants objected, arguing that the Debtor's homestead deed was invalid as it did not comply with Puerto Rico law. The bankruptcy court granted the lien avoidance motion and then denied the Appellants' motion to alter or amend that order. The Appellants now appeal the order denying their motion to alter or amend the lien avoidance order. As they have not met their burden of demonstrating that the bankruptcy court abused its discretion in denying the motion to alter or amend, we **AFFIRM**.

## BACKGROUND

**I.    Pre-Bankruptcy Events**[2]

Prior to the petition date, the Debtor resided at property located in Carolina, Puerto Rico (the "Property"), which was owned by her parents. Doral Bank, holder of a mortgage on the Property, foreclosed on the mortgage in 2002. The Debtor's parents subsequently passed away and Doral Bank scheduled the Property for a foreclosure sale in early 2008. The Appellants planned to purchase the Property at that sale but, instead, they agreed to "pay off" the amounts owed to Doral Bank to help the Debtor "save her home." They maintain they paid Doral Bank approximately $48,000 in February 2008 and the Debtor promised to pay them back.[3]

---

[2]  As the bankruptcy court made no factual findings, these background facts are primarily gleaned from the Appellants' submissions to the bankruptcy court, which are included in the record.

[3]  At oral argument, the parties clarified that Doral Bank did not assign its mortgage to the Appellants.

After a proceeding in the local probate court, deeds establishing the Debtor and her two brothers as the legal owners of the Property were presented to the property registry in July 2011 and were recorded on February 13, 2012.  Neither party disputes that the Debtor was, at all times relevant to this appeal, a titled and "registered" owner of the Property.  It is also undisputed that in December 2011, the Debtor, but not her brothers, signed a homestead deed with respect to the Property.  The Debtor executed the deed before a notary public, but it was not recorded in the property registry.

Meanwhile, in January 2011, the Appellants commenced a "collection of monies" action in the local court against the Debtor and her brothers.  They obtained a $48,000 judgment in their favor on September 12, 2016, which was recorded in the property registry on December 5, 2017.  A writ of execution was eventually issued, and the Property was scheduled for a public sale on October 16, 2018.

## II.    The Bankruptcy Proceedings

### A.    The Bankruptcy Filing

On the day of the public sale, the Debtor filed a chapter 13 petition.  On her bankruptcy schedules, the Debtor indicated she co-owned the Property and that the value of her interest was $32,010.  She also claimed a "100%" exemption of her interest in the Property under P.R. Laws Ann. tit. 31, §§ 1858-1858k, known as the Puerto Rico Homestead Protection Act (the "P.R. Homestead Act").[4]  She listed the Appellants as her only secured creditors, with a $48,000 claim arising from a "judgment lien from a lawsuit."

---

[4] The P.R. Homestead Act was enacted in 2011, replacing the Homestead Protection Act No. 87 of May 13, 1936, P.R. Laws Ann. tit. 31, §§ 1851-1857.  Among other things, the P.R. Homestead Act increased the maximum amount of homestead protection from $15,000 to the entire value of the equity of the property.  See In re Naveira Melendez, No. 10-05297 (ESL), 2014 WL 4656516, at *1 (Bankr. D.P.R. Sept. 17, 2014) (comparing the current P.R. Homestead Act with its predecessor).

3

### B. Proceedings Relating to Motion to Avoid Lien

In February 2019, the Debtor filed a motion seeking to avoid the Appellants' judicial lien pursuant to § 522(f) (the "Motion to Avoid Lien"), claiming it impaired her homestead exemption.[5] The Appellants objected, arguing that § 522(f)(1) was inapplicable because their claim against the Debtor arose from a mortgage rather than a judicial lien. They also asserted that their lien did not impair a homestead exemption to which the Debtor was entitled. They claimed the Debtor's homestead deed was invalid because it was not executed by all three co-owners of the Property and was not recorded in the property registry as required under Puerto Rico law. Although the Appellants attached several supporting documents to their objection, they were all in Spanish.

The Debtor countered that the Appellants' lien was indisputably a judicial lien as it arose from a judgment entered in a "state court money collection lawsuit." She also argued she was entitled to her claimed homestead exemption because she was a registered owner of the Property and she had executed a homestead deed before a notary public which was all that was required by P.R. Laws. Ann. tit. 31, § 1858f. She stressed that the P.R. Homestead Act requires neither that all co-owners of a property execute a homestead deed nor that the homestead deed be recorded for a valid homestead right to exist.

On August 2, 2019, the bankruptcy court, without a hearing and without any explanation, entered an order granting the Motion to Avoid Lien (the "Lien Avoidance Order").

---

[5] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.

4

## C. Proceedings Relating to Motion to Alter or Amend

The Appellants filed a motion to alter or amend the Lien Avoidance Order (the "Motion to Alter or Amend"), advancing several new arguments.[6] First, they argued the Debtor failed to produce any evidence demonstrating that their lien was the only encumbrance on the Property, and that a title search conducted on February 11, 2019 reflected several tax liens against the Debtor and one of her brothers. Second, they contended that the Debtor could not avoid their lien in its entirety because she only owned a partial interest in the Property. Once again, all the supporting documents attached to the Motion to Alter or Amend were in Spanish.

The Debtor opposed the Motion to Alter or Amend, arguing that the Appellants did not identify any newly discovered evidence, intervening change in law, or manifest error of law or fact to support the requested relief. She also challenged the Appellants' allegation that there were IRS liens against the Property, highlighting that the title report contained disclaimers that the registry could not certify that the owners of the Property were the same persons as the "encumbered taxpayer[s]." Further, she maintained the Appellants had waived their argument that her partial ownership of the Property precluded total avoidance of the lien because they raised it for the first time in the Motion to Alter or Amend.

Responding to the Debtor's opposition, the Appellants asserted, for the first time, that there was "intervening law" which warranted reconsideration. They cited <u>Money's People Inc. v. López Llanos</u>, 202 P.R. Dec. 889 (2019), in which, they claimed, the Puerto Rico Supreme Court ruled that the P.R. Homestead Act is prospective in nature and only applies to claims asserted in suits after its enactment. As they commenced their collection of monies action

---

[6] Although the Appellants did not initially identify the legal basis for their requested relief in their Motion to Alter or Amend, they later clarified they were seeking relief under Rule 59(e).

5

against the Debtor prior to the enactment of the P.R. Homestead Act in September 2011, the Appellants contended, the prior version of the act was applicable and any homestead exemption to which the Debtor was entitled was limited to $15,000, as prescribed by the prior act.

On December 9, 2019, the bankruptcy court entered an order denying the Motion to Alter or Amend (the "Order Denying Motion to Alter or Amend"), "adopt[ing] the findings of facts and conclusions of law set forth in the Debtor's Opposition . . . ."

## II. The Appeal

The Appellants timely filed a notice of appeal solely with respect to the Order Denying Motion to Alter or Amend. They did not identify the underlying Lien Avoidance Order in their notice of appeal or brief any issues relating to that order. Thus, this appeal is limited to the Order Denying Motion to Alter or Amend. See Nieves Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854, 861 (B.A.P. 1st Cir. 2017) (stating that an appeal from an order denying a Rule 59(e) motion does not include the underlying judgment unless "it is clear that the appellant intended to appeal both orders, and . . . both parties brief issues relating to the underlying judgment") (citation omitted); see also Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991) (stating that "an appeal from the denial of a Rule 59(e) motion is not an appeal from the underlying judgment" unless "appellant's intent to appeal the judgment is clear") (citations omitted).

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a), (c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). An order denying a motion to alter or amend an order "is final if the underlying order is final and together the orders end the litigation on the merits." United States v. Monahan (In re Monahan), 497 B.R. 642, 646 (B.A.P. 1st Cir.

6

2013) (citation omitted). As "a bankruptcy court order granting lien avoidance is a final order," Ross v. Garcia (In re Garcia), 532 B.R. 173, 181 (B.A.P. 1st Cir. 2015) (citation omitted), so too is the Order Denying Motion to Alter or Amend. Consequently, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

We review an order denying a motion to alter or amend under Rule 59(e) "for manifest abuse of discretion." See Rodriguez Rodriguez v. Banco Popular de P.R. (In re Rodriguez Rodriguez), 516 B.R. 177, 183 (B.A.P. 1st Cir. 2014) (citation omitted). "The abuse of discretion standard is quite deferential[.]" Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 68 (1st Cir. 2012) (citation omitted). We will set aside a bankruptcy court's discretionary ruling only if it clearly appears the court "ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Id. (quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292-93 (1st Cir. 2001)).

## DISCUSSION

**I. Applicable Standards**

  **A. Legal Framework Governing Motions to Alter or Amend Judgment**

The Appellants sought to alter or amend the Lien Avoidance Order under Rule 59(e), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9023. "It is well settled in the First Circuit that to meet the threshold requirements of Rule 59(e), the motion must demonstrate the reason why the court should reconsider its prior decision and must set forth facts or law of a strongly convincing nature to induce the court to reverse its earlier decision." In re Nieves Guzmán, 567 B.R. at 863 (citation omitted) (internal quotation marks omitted). The movant must either clearly establish "a manifest error of law or fact" or must present "newly

7

discovered evidence." Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago Vázquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012) (citing Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)). A Rule 59(e) motion "is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." Nieves Guzmán, 567 B.R. at 863 (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)). "[R]econsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources." Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017) (citations omitted) (internal quotation marks omitted).

    **B.**    **Avoidance of Judicial Liens**

With these standards in mind, we turn to § 522(f)(1)(A) which provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under § 522[(b)], if such lien is . . . a judicial lien . . . ." 11 U.S.C. § 522(f)(1)(A); see also Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 5 (1st Cir. 2003). Applying this statutory language, the First Circuit has held that "a debtor may avoid the fixing of a lien if three requirements are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) the lien impairs an exemption to which the debtor would have been entitled; and (3) the lien is a judicial lien." Wilding v. CitiFinancial Consumer Fin. Servs., Inc. (In re Wilding), 475 F.3d 428, 431 (1st Cir. 2007) (citation omitted).

Ordinarily, the movant "bears the burden of proof to establish that a lien is avoidable." In re Carpenter, 559 B.R. 551, 555 (Bankr. D.R.I. 2016) (citing McNeilly v. Geremia (In re McNeilly), 249 B.R. 576, 579 (B.A.P. 1st Cir. 2000)). But where, as here, "the grounds for an

8

objection to lien avoidance rest upon a challenge to the debtor's claimed homestead exemption, Bankruptcy Rule 4003(c) shifts that burden to the [objector]" to prove that the exemption is not properly claimed. Id. (footnote omitted) (citation omitted); see also Fed. R. Bankr. P. 4003(c). "If the objector can produce evidence to rebut the presumption of validity, then the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is properly claimed." Whatley v. Stijakovich-Santilli (In re Stijakovich-Santilli), 542 B.R. 245, 254-55 (B.A.P. 9th Cir. 2015) (citations omitted). A debtor's entitlement to an exemption is determined as of the petition date. Rockwell v. Hull (In re Rockwell), 968 F.3d 12, 18 (1st Cir. 2020) (citing White v. Stump, 266 U.S. 310, 313 (1924); Myers v. Matley, 318 U.S. 622, 628 (1943); Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 318 (1st Cir. 2008)), cert. denied, 141 S. Ct. 1372 (2021).

Having set forth the applicable standards, we turn now to the merits of this appeal.

## II. Applying the Standards

The Appellants argue that the bankruptcy court made manifest errors of law by failing to consider: (1) the essential requirements of the P.R. Homestead Act when determining that their lien impaired a homestead exemption to which the Debtor was entitled; (2) the nature and origin of the debt and their lien; and (3) the "intervening change in controlling law" set forth in Money's People, Inc. regarding the prospective nature of the P.R. Homestead Act.[7]

---

[7] The Appellants also argue that the bankruptcy court made a manifest error of law by granting the Motion to Avoid Lien in the absence of evidence demonstrating their lien was the only encumbrance on the Property. However, as this argument was presented for the first time in the Motion to Alter or Amend, it is waived for purposes of this appeal. See United States v. Tanco-Pizarro, 892 F.3d 472, 479 (1st Cir. 2018) ("[A]rguments unveiled for the first time in a reconsideration motion are not preserved for appeal.") (citations omitted).

9

### A. The Debtor's Claimed Homestead Exemption

#### 1. The P.R. Homestead Act

The Debtor claimed a homestead exemption with respect to the Property pursuant to the P.R. Homestead Act, P.R. Laws Ann. tit. 31, §§ 1858-1858k, as amended, which was the statute in effect as of the October 16, 2018 bankruptcy petition date.[8] It is well established that the P.R. Homestead Act is intended "to provide the broadest protection to the homes or principal residences of the residents of Puerto Rico and their families in bankruptcy proceedings." Mendez Garcia v. Rushmore Loan Mgmt. Servs., No. 17-2345 (ADC), 2018 WL 4677669, at *5 (D.P.R. Sept. 28, 2018) (citation omitted). Accordingly, in Puerto Rico, "[h]omestead exemptions are to be construed liberally on behalf of the homesteader." In re Estrada Lopez, No. 12-09126 ESL, 2013 WL 3490920, at *3 (Bankr. D.P.R. July 10, 2013) (citing, among others, In re Garran, 338 F.3d at 6). "A bankruptcy debtor who wishes to properly claim the Puerto Rico Home Protection Act exemption must comply with the requirements of said law as of the date of the filing of the bankruptcy petition." Mendez Garcia, 2018 WL 4677669, at *5 (citation omitted); see also In re Perez Hernández, 487 B.R. 353, 365 (Bankr. D.P.R. 2013) (stating that "a debtor must have complied with the requirements in the [P.R. Homestead Act] as of the petition date in order to properly claim the homestead exemption under state (Puerto Rico) law in a bankruptcy proceeding").

The P.R. Homestead Act establishes the general right to a homestead in Puerto Rico as follows:

> Every individual or head of family residing in Puerto Rico shall be entitled to own and enjoy, under the homestead right concept, a parcel and the structure located thereon, or a residence under the regime established in the Condominiums Act,

---

[8] The P.R. Homestead Act became effective on September 13, 2011. It was amended in 2012 and again in 2018.

10

> which belongs to him/her or which he/she lawfully owns, and occupied by
> him/her or his/her family exclusively as a principal residence.

P.R. Laws Ann. tit. 31, § 1858. Thus, an individual may claim homestead protection in Puerto Rico if: (1) the individual owns the property for which the homestead right is being claimed; and (2) the individual or the individual's family occupies the property as a principal residence. Oliveras Rivera v. Otero Nazario, 610 B.R. 414, 417 (D.P.R. 2020). The homestead right "protect[s] properties against attachment, judgment, or foreclosure for the payment of all debts, except for those debts established as exceptions in § 1858a of this title." P.R. Laws Ann. tit. 31, § 1858b.

Section 1858f of the P.R. Homestead Act, known as Article 9, provides two ways in which property owners can assert their homestead right: (1) "by declaring it in the purchase deed upon acquisition of the property"; or (2) "if the property has already been recorded with the Property Registry of Puerto Rico in the name of the homestead claimant, by 'executing a declaration before a notary public stating that the parcel is covered by homestead protection.'" Banco Popular de P.R. v. Santiago-Salicrup, No. 20-1361 (ADC), 2021 WL 1923718, at *4 (D.P.R. Mar. 30, 2021) (quoting P.R. Laws Ann. tit. 31, § 1858f).[9] It further establishes that

---

[9] Article 9 provides in relevant part:

> Any individual or head of family who acquires a rural or urban parcel to establish and create his/her homestead thereon shall state so in the deed after having been duly advised on this duty by the authorizing notary, who shall attest to such fact; and upon recording the same, the Property Registrar shall enter such statements in the body of the registration indicating that the owner has filed a Declaration of Homestead for such property. This entry shall serve as public notice.
>
> If the parcel has already been registered in the name of such individual or head of family, it shall suffice for the owner or owners of such parcel to execute a declaration before a notary public stating that the parcel is covered by homestead protection for the Property Registrar to make a marginal notation on the appropriate record. . . .

P.R. Laws Ann. tit. 31, § 1858f.

11

"[i]nsofar as [a] property has been declared a homestead, the Property Registrar shall be required to make a notation stating that the property was so declared by its owner. Such declarations or notations shall only constitute prima facie evidence of the homestead right of such property[.]" P.R. Laws Ann. tit. 31 § 1858f.

Section 1858h of the P.R. Homestead Act, known as Article 11, "precisely addresses situations where the homestead right is claimed on a residence that is not registered at the Property Registry or where the express declaration of homestead has not been annotated or entered at the Property Registry[.]" In re Perez Hernández, 487 B.R. at 366. It provides: "The fact that a parcel has not been registered in the Property Registry, or that the declaration of homestead has not been filed with or entered in the Property Registry, shall in no way impair the owner's homestead right thereon, provided that such right has been timely claimed as provided in § 1858i [Article 12] of this title." P.R. Laws Ann. tit. 31, § 1858h. Article 12, in turn, establishes the procedure for "a judicial claim of homestead rights when the claimant is faced with a foreclosure, garnishment, or other pre-judgment remedy against the homestead property." Mendez Garcia, 2018 WL 4677669, at *6 (citing P.R. Laws Ann. tit. 31, § 1858i).

We now apply these statutory principles to the present case.

### 2. Whether the Debtor Complied with the P.R. Homestead Act

There is no dispute that the Debtor was a legal owner of the Property for purposes of Article 9 and that she used the Property as her principal residence as required by P.R. Laws Ann. tit. 31, § 1858. It is also undisputed that the Debtor, but not her brothers, executed a homestead deed before a notary public in December 2011, and that the homestead deed was never recorded in the property registry. The parties disagree, however, as to whether more was required under the P.R. Homestead Act for the Debtor to successfully assert her homestead rights in her bankruptcy case.

12

Both parties assert that Article 9 of the P.R. Homestead Act governs here. It provides, in relevant part, that "[i]f the parcel has already been registered in the name of such individual . . . , it shall suffice for the *owner or owners* of such parcel to execute a declaration before a notary public stating that the parcel is covered by homestead protection for the Property Registrar to make a marginal notation on the appropriate record." P.R Laws Ann. tit. 31, § 1858f (emphasis added). The Appellants interpret this provision to mean that all titled owners of the property must appear before the notary public to declare their homestead rights and that the homestead deed must be recorded in the property registry. The Debtor, on the other hand, insists that neither of these actions is required by the P.R. Homestead Act. She argues it is sufficient under Article 9 for a single owner of the property to execute a declaration before a notary public; it does not mandate that *all* owners must execute the notarial deed, nor does it require recordation of the homestead deed to establish a homestead right.

### (a) Failure to Have All Titleholders Execute Homestead Deed

To support their position that all titleholders of the Property needed to execute the homestead deed, the Appellants cite Rivera García v. Registradora, 189 P.R. Dec. 628, 642 (2013) (interpreting Article 9 of the P.R. Homestead Act in the context of a surviving spouse who co-owned inheritance property with several other heirs). They maintain that the Puerto Rico Supreme Court in Rivera García ruled that when a property has more than one titleholder, all of them must execute the notarial deed in which the homestead right is claimed.[10] The Debtor argues, however, that Rivera García is inapposite as it was expressly "revoked" by a 2018 amendment to Article 9 which added language providing that a surviving spouse may execute a

---

[10] The Appellants also cite Bones Cruz v. Registrador, 194 P.R. Dec. 852 (2016), in which, they contend, the Puerto Rico Supreme Court applied the Rivera García holding outside the context of a surviving spouse and hereditary community and affirmed the property registrar's refusal to record a homestead deed executed by only one of the co-owners of the property.

13

homestead deed before the notary public without the appearance of the other heirs.[11] The Appellants counter that the 2018 amendment has no impact here, as it was designed to address the limited situation presented in Rivera García relating to a surviving spouse's homestead rights.

We are, therefore, faced with competing interpretations of the statutory language of Article 9 and the impact of the 2018 amendment. In granting the Motion to Avoid Lien, the bankruptcy court appears to have adopted the Debtor's interpretation. If we were conducting a de novo review of the merits of the Lien Avoidance Order, we would, at this point, apply principles of statutory interpretation to determine the correct meaning of the phrase "owner or owners" in the second paragraph of Article 9.[12] But the Lien Avoidance Order is not before us so, instead, we review the bankruptcy court's denial of a motion to alter or amend for an abuse of discretion. In so doing, we must ascertain whether the Appellants met their burden of demonstrating in their Motion to Alter or Amend that the bankruptcy court made a manifest error of law when granting the Motion to Avoid Lien. "A manifest error of law is [a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." In re Nieves Guzmán, 567 B.R. at 862 (quoting Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004)). "The court usually must have a 'clear conviction of error' or believe that the final judgment was 'dead wrong' before it will alter or amend a judgment on the basis of

---

[11] Apparently, the 2018 amendment added language to Article 9 providing that a surviving spouse may execute a homestead deed before the notary public without the appearance of the other heirs. See In re Kersting, No. 15-06919 (ESL), 2019 Bankr. LEXIS 2919, at *25 (Bankr. D.P.R. Sept. 19, 2019) (providing the court's own translation of the language added to Article 9 by the 2018 amendment). There is, however, no official English translation of the amended statute and neither party provided a certified translation as part of the record on appeal so we cannot ascertain the precise language of the amended Article 9.

[12] We would also consider whether there were any other impediments to the Debtor's claimed homestead exemption, including the fact that as of the petition date, a proceeding in the local court regarding "inheritance partition" was still "pending," as reflected in the Debtor's Statement of Financial Affairs.

14

manifest error. Mere disagreement with how the court weighed the facts or interpreted the case law does not constitute a manifest error justifying reconsideration." In re Fakhari, 554 B.R. 250, 258 (Bankr. D. Kan. 2016) (quoting Steven S. Gensler, Altering or Amending a Judgment, 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 59).

      To satisfy their heavy burden of demonstrating that the bankruptcy court was "dead wrong" in granting the Motion to Avoid Lien, the Appellants needed to produce persuasive case law or other legal authority to support their arguments regarding the requirements of the P.R. Homestead Act. A review of the relevant case law reveals a dearth of English-language cases or secondary sources which directly interpret Article 9 and its requirements. Our analysis is further complicated by the Appellants' failure to provide certified English translations of the legal authorities upon which they rely, namely: (1) the Rivera García case; (2) the 2018 amendment to the P.R. Homestead Act; (3) the Puerto Rico legislature's statement of motives regarding the purpose of that amendment; and (4) the Bones Cruz case. In fact, the Appellants failed to provide any compelling law or evidence, in English, to support reversing the prior decision. It is well settled in the First Circuit that parties who wish to rely on materials which are not in English must provide certified English translations of those materials. See Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008); see also 1st Cir. BAP L.R. 8011-1(b) (providing that the Panel "will disregard any document(s) not in the English language unless a contemporaneous official, certified, or stipulated translation(s) is furnished" and that when a party cites an opinion of the Supreme Court of Puerto Rico and the cited authority is not available in English, "an official, certified, or stipulated translation thereof shall be filed"). In the absence of any compelling legal authority in English, the Appellants have failed to demonstrate that the bankruptcy court committed a manifest error of law in determining the Debtor was entitled to a homestead exemption despite the failure of all titleholders to execute the homestead deed.

### (b) Failure to Record Homestead Deed

The Appellants also argue that the bankruptcy court made a manifest error of law because the Debtor's homestead deed was invalid as it was not recorded in the property registry. The Debtor counters that the Appellants erroneously equate the lack of recordation of the homestead deed with the non-existence of the homestead right. The Debtor insists that, in Puerto Rico, property rights exist regardless of whether they have been recorded in the property registry. In order words, she maintains, "the [recording] of the claimed homestead right by notarial act in the property registry is not a pre-requisite to its existence . . . ." In support, the Debtor relies on the decision of the U.S. District Court for the District of Puerto Rico in Mendez Garcia, 2018 WL 4677669. The case is not entirely on point, but it is instructive.

In Mendez Garcia, the district court reversed the bankruptcy court's ruling that the debtor could not claim the Puerto Rico homestead exemption because she did not appear as the title owner of the property with the property registry, even though she was the legal owner of the residential property by virtue of a purchase deed. Id. at *5. The district court explained that "the recordation mandate included in Article 9 is directed at the Property Registry of Puerto Rico regarding notarial acts declaring homestead rights that titular registrants may present in order to secure legal rights over real property before third parties." Id. at *6 (citations omitted). "As such, Article 9 does not entail a recordation requirement directed at homestead claimants upon which the validity of a homestead rights declaration depends." Id. (citation omitted). Rather, the district court stated, "the essential requirements are the legal ownership of the property being claimed as a homestead, and that the property claimed as a homestead be the claimant's principal residence or that of his/her family." Id. (citing P.R. Laws Ann. tit. 31, § 1858) (other citation omitted).

The district court highlighted that "under Puerto Rico law, the existence or validity of legal ownership over real property does not depend on the owner's title being registered in the Property Registry of Puerto Rico," id., stating:

> [i]t is a well-known fact that, except for a mortgage title, art. 1774 of the Civil Code, or a title subject to the provisions of the Horizontal Property Act, 31 L.P.R.A. § 1291, *the recording with the Registrar of Property is merely declarative and it is not a source of rights*. See Goenaga v. O'Neill de Milán, 85 P.R.R. 162, 196 (1962); Baldrich v. Registrar, 77 P.R.R. 700, 705 (1954). The recording with the Registry is not a way of acquiring an interest on property, but of securing legally those rights already existing through publication in the registry. Goenaga v. O'Neill de Milán, supra; see Jiménez v. Alvarez, 69 P.R.R. 299, 308 (1948). Save for the two exceptions already mentioned, in our jurisdiction property rights are constituted, conveyed, modified and extinguished pursuant to the provisions of the Civil Code and other applicable substantive laws.

Id. at *7 (quoting Marín v. Montijo, 9 P.R. Offic. Trans. 351, 355-356 (1979)) (footnote omitted) (emphasis added). The district court concluded, therefore, that because the debtor had legal ownership of the residential property pursuant to a purchase deed in accordance with the Puerto Rico Civil Code and because she had properly asserted a homestead right prior to filing bankruptcy, she was entitled to her claimed homestead exemption. Id.

The Debtor insists that, based on Mendez Garcia, even if Article 9 required all titleholders to consent in writing to the declaration of homestead rights, a failure to obtain such consent would only prevent the recording of the homestead deed in the property registry, but would not preclude the existence or validity of the homestead right. This is consistent with In re Perez Hernández, 487 B.R. at 366 ("As a general rule, Puerto Rico's Property Registry is only declarative in nature, meaning that citizens are not mandated to record their transactions to constitute their validity except in the limited situations required by law.") (citing, among others, Rivera v. Rivera, 30 P.R. Dec. 851, 852 (1922)). The Appellants, on other hand, attempt to distinguish Mendez Garcia from the present case by arguing that it involved a duly executed, but

17

unrecorded, purchase deed, whereas the homestead deed in this case was *not* validly executed. However, as discussed above, they have not demonstrated that the homestead deed failed to comply with Puerto Rico law. Nor have they provided any legal authority to support their position that the underlying principle of Puerto Rico law highlighted in Mendez Garcia—that recordation of property interests with the property registry is "merely declarative and not a source of rights"—is inapplicable here.

Based on the foregoing, we conclude that the Appellants have failed to demonstrate the bankruptcy court made a manifest error of law in granting the Motion to Avoid Lien despite the Debtor's failure to record the homestead deed in the property registry.

We advance now to the Appellants' two remaining arguments.

**B.      Intervening Change in Controlling Law**

The Appellants also argue that the bankruptcy court should have reconsidered the Lien Avoidance Order due to an intervening change in controlling law as set forth in Money's People, Inc. In that case, the Appellants contend, the Puerto Rico Supreme Court ruled that the P.R. Homestead Act is prospective in nature and only applies to claims asserted in suits filed after its enactment. As they commenced their collection of monies action against the Debtor prior to the enactment of the P.R. Homestead Act in September 2011, the Appellants argue, the prior version of the act was applicable and any homestead exemption to which the Debtor was entitled was limited to $15,000, as prescribed by the prior act.

We are not convinced for several reasons. First, the Money's People case is in Spanish and no English translation was provided. As such, we cannot consider it. See 1st Cir. BAP L.R. 8011-1(b). Second, Money's People was issued on June 28, 2019, which was *before* the bankruptcy court entered the Lien Avoidance Order. Therefore, it does not constitute an "intervening" change in law which would warrant reconsideration by the bankruptcy court.

18

And third, even if, as the Appellants assert, the P.R. Homestead Act is to be applied prospectively in local court proceedings, it is well-established that for bankruptcy purposes, a debtor's entitlement to an exemption is determined as of the petition date, see In re Rockwell, 968 F.3d at 18, and that a debtor who wishes to claim the Puerto Rico homestead exemption "must comply with the requirements of *said law as of the date of the filing of the bankruptcy petition*." Mendez Garcia, 2018 WL 4677669, at *5 (citing In re Perez Hernández, 487 B.R. at 365) (emphasis added); see also In re Depascale, 496 B.R. 860, 869 (Bankr. N.D. Ohio 2013) (holding that the homestead exemption statute in effect on the petition date determines the debtor's exemption rights).

Based on the foregoing, we conclude that the bankruptcy court did not abuse its discretion by declining to grant the Motion to Alter or Amend on the basis of an intervening change in controlling law.

### C. Failure to Consider Surrounding Circumstances

Finally, the Appellants maintain the bankruptcy court made a manifest error of law by granting the Motion to Avoid Lien without considering the nature and origin of the debt and their lien. They argue that their lien "is not a typical judicial lien" but rather security for the amounts they paid in 2008 to pay off Doral Bank's mortgage for the benefit of the Debtor. Highlighting that the Debtor has occupied the Property for the last 11 years rent-free, the Appellants assert the avoidance of their lien is inequitable and unjustly enriches the Debtor. We are not persuaded.

First, the Appellants' lien falls squarely within the Bankruptcy Code's definition of a "judicial lien." Under the Bankruptcy Code, a "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," 11 U.S.C. § 101(36), and is distinguishable from a "security interest," which is "a lien created by an agreement." 11 U.S.C. § 101(51). Accordingly, "judicial liens are created by judicial action while security interests are

19

created by consent of the parties." Naqvi v. Fisher, 192 B.R. 591, 595 (D.N.H. 1995) (citation omitted). Here, despite the unusual circumstances surrounding the origin of the Debtor's obligation to the Appellants, there is no evidence in the record that the Appellants' lien was created by an agreement or by the Debtor's consent; in fact, the Appellants conceded at oral argument that there was no assignment of Doral Bank's mortgage. Rather, the Appellants' lien arose from a judgment entered by the local court in a "collection of monies" action. As such, it was clearly a "lien obtained by judgment" in a nonconsensual legal process and, therefore, constitutes a "judicial lien" within the meaning of the Bankruptcy Code.

Finally, any argument that the bankruptcy court should have denied the Motion to Avoid Lien based on equitable considerations is foreclosed by Law v. Siegel, 571 U.S. 415, 425 (2014), in which the Supreme Court held that the Bankruptcy Code does not confer "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct." The Siegel Court made clear that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." Id. (emphasis omitted); see also Ellmann v. Baker (In re Baker), 791 F.3d 677, 683 (6th Cir. 2015) ("[U]nder Siegel, bankruptcy courts do not have authority to use their equitable powers to disallow exemptions or amendments to exemptions due to bad faith or misconduct.").

## CONCLUSION

For the foregoing reasons, we conclude that the Appellants did not satisfy their burden of demonstrating the bankruptcy court abused its discretion in denying the Motion to Alter or Amend. Accordingly, we **AFFIRM**.